UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 3:17-00044 |
| | ) | Chief Judge Crenshaw |
| PATRICK DANE FALTE | ) | FILED UNDER SEAL |

### DEFENDANT'S OBJECTIONS TO RESTITUTION

Patrick Dane Falte, by and through counsel and in response to the Court's Order directing him to set forth any remaining objections to the restitution requests set forth in the Presentence Investigation Report issued July 25, 2019 and the specific restitution recommendations set forth in the Second Supplement to the Presentence Report, submits the following:[1]

### Introduction

The Presentence Investigation report outlines multiple claims for restitution. Based on a determination that only victims who are the subjects of the offenses of conviction are entitled to restitution, the report reduces the claims to five victims. In the addendum, the USPO recommends specific amounts of restitution for those five victims. The following summarizes the claimed restitution and the PSR's recommended restitution:

---

[1] At the time of this filing, Mr. Falte remains out of the district. Undersigned counsel therefore has not had an opportunity to fully discuss the restitution issues with him. This pleading is filed in conformity with the Court's order, but may be subject to amendment when defense counsel has an opportunity to confer with Mr. Falte.

1

| Victim | Claimed Amount | PSR's Recommended Amount |
| --- | --- | --- |
| Violet "At School Series" | $10,000 | $3,000 |
| Henley "BluePillow Series" | $5,000 | $3,000 |
| Donaello "Feb212 Series" | $5,000 | $3,000 |
| Sierra, Savannah, Skyler or Sally "Jan_Socks Series" | $32,000 | $3,000 |
| Andy "SpongeB Series" | $50,415 | $3,000 |

This memorandum sets for the legal requirements for restitution in child pornography cases and submits that the materials provided by the government fail to meet the legal standard for restitution established in *Paroline v. United States*, 572 U.S. 434 (2014), as detailed below. That said, the restitution proposed in the PSR Addendum may be wholly reasonable and appropriate. Further study may support the total amount of $15,000, provided it is joint and several among the defendants, and Mr. Falte may, when given time to evaluate it, recommend such resolution. At this juncture, however, there is insufficient factual or legal support for the claimed amounts.

## Analysis

**A. Legal Framework**

Under *Paroline v. United States*, 572 U.S. 434 (2014), restitution is proper in a child pornography case only to the extent that the government establishes that the defendant's offense proximately caused the victim's losses. *Id.* at 448. The Court in *Paroline* suggested the following analysis for calculating an individual defendant's responsibility for a victim's losses:

> [D]istrict courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses like the hypothetical car accident described above, see supra, at 10, 188 L. Ed., at 728), then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of [the broader number of offenders involved (most of whom will, of course, never be caught or convicted);] whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id*. at 460.

The Court went on to note that the government, which bears the burden of proof for restitution, could also "inform the district court of restitution sought and ordered in other cases." *Id*. at 462. To date, the government has produced no such accounting to Mr. Falte or to the Court.

*Paroline* does not create a rigid analytical framework, leaving lower courts to establish their methods of considering proximate cause and a defendant's relative contribution to a victim's losses. In *United States v. Grovo*, 826 F.3d 1207 (9th Cir. 2016), the court vacated the restitution order and remanded for the district court to "disaggregate" the losses caused by the original abuser's actions and the ongoing, i.e., future distribution of the images, from the restitution amount. *Id*. at 31-32. In *United States v. Gamble*, 2015 Dist. LEXIS 89102 (E.D. TN 2015), following remand with instructions to determine proximate cause, the district court analyzed *Paroline* and suggested a framework of tiering restitution based on relative responsibility for the losses suffered by the victim.

3

### B. Violet's Restitution Claim

According to the materials provided by the USPO to defense counsel, Violet was sexually abused by her father, and images of that abuse was discovered on Giftbox Exchange. At the time of Mr. Falte's offense, Violet was unaware of the distribution of her images on Giftbox Exchange or any other website. Although one expert opined that victims such as Violet experience losses later in life, the description of her by a forensic examiner (Dr. Green) found her reasonably well-adjusted at that time of that evaluation. In short, while there may be evidence of harm resulting from her father's sexual abuse of her, there is no evidence that Mr. Falte's conduct proximately caused any losses because, according to Dr. Green, Violet is unaware of the distribution of her images on Giftbox Exchange. While Mr. Falte does not dispute Violet's status as a victim, under *Paroline*, there is insufficient proof that he proximately caused any losses–current or future. Furthermore, to the extent that the Court may find that Mr. Falte contributed to Violet's losses, the government has not provided any discovery detailing prior–or future–offenders' contribution to the losses and has not provided any persuasive proof which separates the harm caused by the abuse and the harm that will be caused if Violet ever learns that her images were distributed on Gift Box Exchange. Finally, the losses for Violet are projections based on an expert's opinion, not based on fact. The losses are too speculative for determination by this Court.

### C. Henley's Restitution Claim

According to the materials provided by the USPO. Henley is a young woman who was sexually abused from the ages of 5 - 12 and who is now an adult. Henley has elected not to be informed of any future distribution of her images. Accordingly, it appears that Mr. Falte's conduct, in that Henley is unaware of it, could not be the "proximate cause" of any losses. As a purely legal

4

matter, under *Paroline*, her losses were and are caused by someone other than Mr. Falte and, accordingly, restitution from Mr. Falte is not permitted. A proximate cause determination cannot be made based on the materials provided and, as importantly, an allocation among all contributors to Henley's losses cannot be made based on the materials provided to the defendant.

**D. Donatello's Restitution Claim**

Donatello is a young man in his 30s. The forensic evaluation of him which was conducted in 2018 states that he was abused in the summer following his seventh grade in school. He has indisputably suffered over time, but the materials provided by the USPO do not sufficiently distinguish between potentially hereditary disabilities such as bipolar disorder and the display of his images on Gift Box Exchange. Certainly much of the forensic evidence of his difficulties–which are indeed compelling--predates the inception of Gift Box Exchange and, therefore, Mr. Falte's offenses. A proximate cause determination cannot be made based on the materials provided and, as importantly, an allocation among all contributors to Donatello's losses cannot be made based on the materials provided to the defendant. Notably, according to the victim's own statement, Donatello's actual abuser was not ordered to pay restitution. Mr. Falte should not be held to a higher standard of accountability that the hands-on abuser.

**E. Sierra, Savannah, Skylar or Sally's Restitution Claim**

All of these children suffered tremendous harm at the hands of their abuser. However, according to the attorney representing the four siblings, Sierra has not been informed about the circulation of images of the abuse on Gift Box Exchange. The demand letter likewise fails to state that the other children have been made aware of their images appearing on any website except for Savannah, and it is unclear when, or how, she became aware of the distribution of the images–or

5

whether she is actually aware of their distribution through the Gift Box Exchange. As compelling as the girls' trauma is, there is insufficient evidence that the defendant's conduct proximately caused that harm. Further, the government has provided no discovery materials which details the payment of any restitution by any other offender. It is impossible to calculate, based on the materials provided by the USPO, the contribution, if any, of the defendant's conduct to the victims' losses.

### F. Andy's Request for Restitution

Andy's personal statement speaks directly to the impact of the distribution of his images on the internet. However, his letter was written in 2014, well before the inception of the Gift Box Exchange. As a purely legal matter, therefore, his letter carries diminished weight as proof that Mr. Falte's offenses proximately caused his losses.

To the extent that the Court may determine that Mr. Falte's offenses proximately caused Andy's losses, the materials provided by the USPO do virtually nothing to apportion the losses among the various offenders as required by *Paroline*. Andy most certainly has been victimized. But the lion's share of proximate cause goes to his abuser, not to Mr. Falte. Much of the evidence provided in the requests for restitution predate the inception of Gift Box Exchange. *See, e.g.* Psychological Testing Consultation, 6/14/2013 (2 years before inception of Gift Box Exchange). There is simply insufficient evidence of apportionment to find Mr. Falte liable for any loss amount.

### Conclusion

Mr. Falte does not dispute the assertion that the individuals discussed herein suffered losses due to abuse. He acknowledges that losses can also occur as a result of the distribution of images on the internet. However, under the analysis of *Paroline*, the government has not offered proof that he proximately caused any specific amount of loss and has failed to provide any discovery

6

Case 3:17-cr-00044   Document 187   Filed 08/06/19   Page 6 of 7 PageID #: 1404

whatsoever which would allocate any loss among the potential contributors–which would include the government itself, as it continued to operate Gift Box Exchange after it arrested Mr. Falte in October 2016.

Respectfully submitted,

s/Kathleen G. Morris
Kathleen G. Morris
42 Rutledge Street, 1st Floor
Nashville, TN 37210
615-242-3200
Morris@KMorris.net
Counsel for Patrick Dane Falte

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed via the Court's electronic filing system which generated an email notification thereof to AUSA Byron Jones and AUSA Carrie Daughtrey, 110 Ninth Avenue South, Suite A-961, Nashville, TN 37203, and to Lauren Britsch, USDOJ, 1400 New York Avenue NW, Washington, D.C. 20005, and to USPO Andrea Testa, 110 Ninth Avenue South, Nashville, TN 37203, and sent via email to each of them this 6th day of August 2019.

s/Kathleen G. Morris
Kathleen G. Morris
